IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIANE HYJURICK,** | : | No. 3:11cv1282 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **COMMONWEALTH LAND TITLE** | : | |
| **INSURANCE CO. and FIDELITY** | : | |
| **NATIONAL FINANCIAL, INC.**, | : | |
| individually & t/d/b/a Fidelity National | : | |
| Title Group, | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court is Defendants Commonwealth Land Title Insurance Company and Fidelity National Financial, Inc.'s motion brought pursuant to Rule 12 of the Federal Rules of Civil Procedure. (Doc. 3). Defendants move this court to dismiss plaintiff's claims with respect to Defendant Fidelity National Insurance, Inc. and to abstain from proceeding with respect to Defendant Commonwealth Land Title Insurance Company. This motion is fully briefed and ripe for disposition.

**Background**

Plaintiff Diane Hyjurick (hereinafter "plaintiff") purchased two adjacent parcels of real property in West Hazleton, Pennsylvania from Marilyn Shenosky (hereinafter "seller") on July 3, 2007. (Doc. 1, Compl. (hereinafter "Compl.") ¶¶ 6-7). Parcel One is described in the deed of transfer as 130' x 40', and Parcel Two is described in the same deed as 150' x 40'. (Id. ¶ 7; Doc. 1, Ex. A, Deed). The deed recording the transaction of Parcels One and

Two was filed in the Office of the Luzere County Recorder of Deeds in deed book 3007 at page 174731. (Compl. ¶ 8; Doc. 1, Ex. A, Deed).

Plaintiff applied for a title insurance policy from Defendant Commonwealth Land Title Insurance Company (hereinafter "Commonwealth") before the land transaction was completed. (Compl. ¶ 10). Defendant Fidelity Financial, Inc. (hereinafter "Fidelity") is Commonwealth's parent company, and is alleged to have purchased Commonwealth on December 22, 2008. (Id. ¶ 3).

On July 5, 2007, Commonwealth issued a title insurance policy to plaintiff after performing a title search to ensure that title was properly transferred to plaintiff. (Id. ¶¶ 11-12; Doc. 1, Ex. B, Owner's Policy of Title Ins.) Subject to certain exclusions, the policy plaintiff purchased essentially provided coverage in the event that (1) the title was not properly conveyed to plaintiff as the conveyance is described in the deed, (2) the title contains defects and/or (3) the title is unmarketable. (Doc. 1, Ex. B, Owner's Policy of Title Ins.). After plaintiff purchased the policy, Commonwealth accepted all premiums required under the policy. (Compl. ¶ 15).

Some time after purchasing the land, plaintiff learned that seller only possessed title to one-half of the land described as Parcel One in the deed. (Compl. ¶¶ 16-17). On January 23, 2008, plaintiff sent Commonwealth a written notice of claim asserting that her title insurance policy should protect her interest with respect to the conveyance of Parcel One. (Id. ¶ 19; Doc. 1, Ex. C, Notice of Claim). Commonwealth acknowledged receipt of plaintiff's

claim on January 31, 2008, and on February 29, 2008, a Commonwealth claims attorney was assigned to the case. (Compl. ¶¶ 21-22; Doc. 1, Ex. D, Letter Dated Jan. 31, 2008; Ex. E, Letter Dated Feb. 29, 2008).

On May 21, 2008, Commonwealth's claims attorney expressed that "it was not clear whether or not this claim would be covered under the title policy." (Compl. ¶ 23; Doc. 1, Ex. F, Letter Dated May 21, 2008). From June 2008 to September 2008, plaintiff sent Commonwealth six letters in an attempt to (1) schedule a conference to give her official statement, and (2) to confirm whether or not the policy will provide coverage. (Compl. ¶ 24; Doc. 1, Ex. G1, Letter Dated June 4, 2008; Ex. G2, Letter Dated June 18, 2008; Ex. G3, Letter Dated July 9, 2008: Ex. G4, Letter Dated Aug. 4, 2008; Ex. G5, Letter Dated Aug. 11, 2008; Ex. G6, Letter Dated Sept. 17, 2008). On December 8, 2008, Commonwealth sent plaintiff a letter stating that it desired to amicably settle the matter. (Compl. ¶¶ 25; Doc. 1, Ex. H, Letter Dated Dec. 8, 2008).

Plaintiff contends that, as of July 2011, Commonwealth has not affirmed or denied coverage, concluded its investigation, or provided updates regarding any aspect of the investigation. (Compl. ¶¶ 27-29). On July 6, 2009, plaintiff initiated an action for declaratory relief (case no. 10040-2009) in the Court of Common Pleas of Luzerne County (hereinafter "state court action"), in which plaintiff specifically sought a judicial determination that the policy covered plaintiff's claimed loss. (Doc. 3-3, Ex. 1, State Ct. Compl.).

Plaintiff initiated the instant litigation on July 7, 2011. In her complaint,

3

plaintiff alleges one count containing various bad faith claims and one count alleging a violation under the Pennsylvania Unfair Trade Practices and Consumer Protections Law. (Id. ¶¶ 44-70). On September 12, 2011, Commonwealth and Fidelity filed the instant Rule 12 motion. (Doc. 3). The matter is fully briefed, and for the following reasons, defendants' motion will be granted in part and denied in part.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Plaintiff is a citizen and resident of Pennsylvania. (Compl. ¶ 1). Defendant Commonwealth Land Title Insurance Company is a Nebraska corporation with a principal place of business in New Jersey. (Id. ¶ 2). Defendant Fidelity National Financial, Inc. is a Delaware corporation with a principal place of business in Florida. (Id. ¶ 3). Because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00, the court has jurisdiction over the case. See 28 U.S.C. § 1332. Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlaim v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Standard of Review**

Defendants brings this motion pursuant to Federal Rules of Civil Procedure 12(b)(6). When a 12(b)(6) motion is filed, the sufficiency of the allegations in the complaint are tested. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-

4

movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation."  Id. at 234-35.  In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" a standard which "does not require 'detailed factual allegations,'" but a plaintiff must make "'a showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the speculative level.'"  McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Twombly, 550 U.S. at 555-56).  The

5

"complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted).

The Supreme Court has counseled that a court examining a motion to dismiss should, "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Next, the court should make a context-specific inquiry into the "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." Id. at 681.

**Discussion**

Defendants present two arguments in their motion to dismiss. First, they contend that the claims against Fidelity should be dismissed because plaintiff has failed to allege adequate facts to state a claim as a matter of law. Second, defendants argue that the instant action is parallel to an ongoing Luzerne County Court of Common Pleas lawsuit and that, given certain equitable factors, we should abstain from hearing the claims against Commonwealth.

6

**1. Motion to Dismiss Fidelity**

Plaintiff named Fidelity as a defendant in its capacity as Commonwealth's parent company. (Compl. ¶ 3). Defendants assert that plaintiff's claims against Fidelity should be dismissed because plaintiff has failed to meet federal pleading standards. The court agrees with defendants and Fidelity will be dismissed from this action.

In Pennsylvania, "a corporation . . . is normally regarded as a legal entity separate and distinct from its shareholders . . . ." Ashley v. Ashley, 393 A.2d 637, 641 (Pa. 1978); see also Coll. Watercolor Grp., Inc. v. William H. Newbauer, Inc., 360 A.2d 200, 207 (Pa. 1976) (noting that a corporation with a single shareholder can be an independent entity); Barium Steel Corp. v. Wiley, 108 A.2d 336, 341 (Pa. 1954) ("The fact that one person owns all of the stock does not make him and the corporation one and the same person"); Advanced Tele. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC, 846 A.2d 1264, 1278 (Pa. Super. Ct. 2004) ("[t]he general rule is that a corporation shall be regarded as an independent entity even if its stock is owned by one person."). As such, "there is a strong presumption in Pennsylvania against piercing the corporate veil." Lumax Indus. v. Aultman, 669 A.2d 893, 895 (Pa. 1995) (citing Wedner v. Unemployment Comp. Bd. of Review, 296 A.2d 792, 794 (Pa. 1972)).

The law treats corporations as being legally separate from shareholders, even when the only shareholder is another corporation. See United States v. Bestfoods, 524 U.S. 51, 61 (1998) (noting that it is "deeply

'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." (quoting Douglas & Shanks, Insulation from Liability Through Subsidiary Corporations, 39 YALE L.J. 193 (1929))); Lowenstein v. Catholic Health E., 820 F. Supp. 2d 639, 643-44 (E.D. Pa. 2011) (noting that "[i]t is well settled that 'a parent corporation, like any stockholder, is not normally liable for the wrongful acts . . . of a subsidiary even if or simply because the parent wholly owns the subsidiary.'" (quoting Jean Anderson Hierarchy of Agents v. Allstate Life Ins. Co., 2 F. Supp. 2d 688, 691 (E.D. Pa. 1998))).  Nevertheless, the court will pierce the corporate veil and hold a corporate shareholder liable "'when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime.'"  Pearson v. Component Tech. Corp., 247 F.3d 471, 484 (3d Cir. 2001) (quoting Zubik v. Zubik, 384 F.2d 267, 272 (3d Cir. 1967)); see also Ashley, 393 A.2d at 641 ("whenever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interest, the fiction of the separate corporate identity may properly be disregarded.").

Courts apply the alter ego doctrine to determine whether equity requires the piercing of the corporate veil.  The alter ego doctrine is "not applied by a test, but by consideration of relevant 'factors . . . [to determine] whether the debtor corporation is little more than a legal fiction.'"  Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk, 332 F.3d 188, 197 (3d Cir. 2003) (quoting Pearson, 247 F.3d at 485).

When plaintiffs seek to pierce the corporate veil of a wholly owned subsidiary corporation on an alter ego theory of liability, they "must essentially demonstrate that in all aspects of the business, the [parent and subsidiary] corporations actually functioned as a single entity and should be treated as such." Pearson, 247 F.3d at 485.  Courts sitting in the Third Circuit weigh the following factors in determining whether the veil should be pierced:  "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from debtor corporation by the dominant stockholder, nonfunctioning of offices and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder."  Id. at 484-85 (citing Am. Bell, Inc. v. Fed'n of Tel. Workers of Pa., 736 F.2d 879, 886 (3d Cir. 1984)).

In the instant case, plaintiff did not plead that Fidelity and Commonwealth function as a single organization; rather, she alleged that they are separate corporations with different states of incorporation and principle places of business.  (See Compl. ¶¶ 2-3).  The complaint is devoid of any factual averments that support a finding that the alter ego test applies.  Plaintiff simply alleges that Fidelity is Commonwealth's parent company.[1] (See Compl. ¶ 3).  Plaintiff argues that pleading a parent-subsidy corporate relationship is sufficient to overcome a motion to dismiss and that discovery is

---

[1] The court notes that plaintiff uses the singular word "defendant" throughout the complaint and omits Fidelity from the prayer for relief, in which she only seeks relief from Commonwealth.  (See Compl. at *ad damnun cl.*).

9

needed to determine if any evidence exists to support piercing the corporate veil.[2]

Plaintiff's argument with respect to Fidelity is unsupported by the law. District courts sitting in the Third Circuit have held that a plaintiff who seeks to pierce the corporate veil of a wholly owned subsidiary corporation must allege some facts beyond mere evidence of ownership to support such an action against the parent company. See, e.g, Lowenstein, 820 F. Supp. 2d at 644-45 (dismissing the claims against a parent company when the only facts alleged against that parent company were that it was a Pennsylvania corporation and the owner of the defendant); Blair v. Infineon Techs. AG, 720 F. Supp. 2d 462, 470-72 (D. Del. 2010) (allowing claims to proceed against a parent company because the plaintiffs pled specific facts supporting the "single entity" test under the alter ego doctrine); Freedom Med., Inc. v. Royal Bank of Can., No. 04-cv-5626, 2005 WL 3597709, at *9-10 (E.D. Pa. Dec. 30, 2005) (dismissing the claims against a parent company because the plaintiff made no factual allegations that, if true, would lead the court to pierce the corporate veil). Accordingly, in the absence of any factual averments that could lead us to find that Commonwealth's corporate veil should be pierced,

---

[2] Plaintiff cites Continental Insurance Co. v. Schneider, Inc., 873 A.2d 1286 (Pa. 2005) and contends that we should impose liability on Fidelity under Pennsylvania's rules for successor liability. (See Doc. 5, Br. in Opp'n to Mot. to Dismiss & Abstain at 9). The facts alleged in the complaint, however, do not implicate successor liability. Commonwealth is alleged to be a separate corporate entity. Fidelity cannot be Commonwealth's successor if Commonwealth exists as a separate corporation, albeit one that is a wholly owned subsidiary.

10

we will dismiss plaintiff's claims with respect to Fidelity.

### 2. Motion to Abstain from Proceeding with the Claims Against Commonwealth

Defendants also argue that we should abstain from adjudicating the case with respect to Commonwealth pursuant to the doctrine proclaimed in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976). Defendants allege that the instant case is (1) parallel to the state court action for declaratory relief plaintiff initiated in July 6, 2009 and (2) that the extraordinary circumstances of the instant case warrant abstention. We disagree with defendants and the motion to abstain will be denied.

As a fundamental principle of federalism, the Supreme Court of the United States has rules that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction, for both the state and Federal courts have certain concurrent jurisdiction over such controversies . . . ." McClellan v. Carland, 217 U.S. 268, 282 (1910). In the face of duplicative litigation, however, the Supreme Court adopted an abstention doctrine for district courts to follow in the interests of "wise judicial administration." Colorado River, 424 U.S. at 818. Although, prior to articulating our federal abstention doctrine, the Supreme Court recognized the "virtually unflagging obligation of the federal courts to exercise jurisdiction given to them." Id. at 817.

Abdication of federal jurisdiction can only be justified in "exceptional circumstances" where countervailing interests outweigh the duty to exercise jurisdiction. Id. at 813 (quoting Cnty. of Allegheny v. Frank Mashuda Co., 360

11

U.S. 185, 188-89 (1959)).  For the application of the Colorado River abstention doctrine to be justified, the state and the federal court cases at issue must be "parallel."  See Trent v. Dial Med. of Fla., Inc., 33 F.3d 217, 223 (3d Cir. 1994) (superseded by statute on other grounds).  If the federal and state court cases are parallel, and it seems that abstention may be appropriate, then the court should weigh the following factors that govern its discretion to abstain:

> (1) Which court first assumed jurisdiction over property involved, if any;
> (2) Whether the federal forum is inconvenient;
> (3) The desirability of avoiding piecemeal litigation;
> (4) The order in which the respective courts obtained jurisdiction;
> (5) Whether federal or state law applies; and
> (6) Whether the state court proceeding would adequately protect the federal plaintiff's rights.

Id. at 225 (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 15-16, 19-26 (1983); Colorado River, 424 U.S. 818-19).  Deciding whether to refrain from exercising federal jurisdiction "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."  Moses H. Cone, 460 U.S. at 16.

Thus, to determine whether the Colorado River abstention doctrine applies to the instant case, the court must first make the threshold determination as to whether the state and federal actions are parallel.  If the two cases are deemed to be parallel, the court will weigh the six Colorado River factors and determine whether abstention is warranted.

State court and federal court lawsuits are "parallel" for the purposes of the Colorado River abstention doctrine when those cases involve the same parties and "'substantially identical' claims, raising 'nearly identical allegations and issues.'" Timoney v. Upper Merion Twp., 66 F. App'x 403, 405 (3d Cir. 2003) (quoting Trent, 33 F.3d at 224). It is undisputed that the parties in the state court action and the parties in the instant lawsuit are the same. (See Doc. 3-2, Mem. in Supp. of Mot. to Dismiss & Abstain at 7; Doc. 5, Br. in Opp'n to Mot. to Dismiss & Abstain at 11). Diane Hyjurick is the sole plaintiff in both the state and federal court actions. Commonwealth is a defendant in both actions. Fidelity is not a party to the state court action, and, as is explained above, it will be dismissed from this case. In light of the matching parties, our determination of whether the state court action and the instant action are parallel will turn on whether the claims presented in each case are the same.

In assessing whether claims in state and federal actions are substantially identical, courts must ensure that the proceedings are "truly duplicative" because deference to the state court is not appropriate "[w]hen the claims, parties, or requested relief differ." Complaint of Bankers Trust Co. v. Chatterjee, 636 F.2d 37, 40 (3d Cir. 1980). While some of the issues to be litigated in the state court may be identical to issues that will be raised in the federal court, "the lack of identity of all issues necessarily precludes Colorado River abstention." Univ. of Md. at Balt. v. Peat Marwick Main & Co., 923 F.2d 265, 276 (3d Cir. 1991). In other words, state and federal court actions can

involve similar facts, allegations and overlapping issues, but are nonetheless not parallel if the claims asserted and the relief requested are not substantially identical. See, e.g., R & R Capital LLC v. Merritt, 426 F. App'x 85, 89 (3d Cir. 2011) (finding that the state and federal cases were not parallel even though they contained similar allegations because the claims for relief differed); Beals v. Bank of Am., N.A., No. 10-5427, 2011 WL 5415174, at *6 (D.N.J. Nov. 4, 2011) (finding that a federal class action lawsuit that involved the same facts as a state court foreclosure action was nonetheless not parallel to the foreclosure action, even though the state court counterclaims were the same as some of the federal court claims); Util. Lines Constr. Servs., Inc. v. Hoti, Inc., 799 F. Supp. 2d 331, 341 (D. Del. 2011) (noting that the claims in federal and state court lawsuits are not the same, in part, because "the specific counts alleged are unique to each case").

  Here, plaintiff's state court action and the instant action do not have parallel claims, making this case inappropriate for abstention under Colorado River. Although the same title insurance policy is alleged to provide coverage in both the federal and state court actions, plaintiff's claims in each suit are different. In the state court action, plaintiff seeks, pursuant to the Declaratory Judgment Act, 42 PA. CONS. STAT. ANN. § 7531, *et seq.*, a judicial determination as to whether her claimed loss is covered under her title insurance policy with Commonwealth. (See Doc. 3-3, Ex. 1, Compl.). Plaintiff specifically pleads in her state court complaint as follows:

> 16. Pursuant to Section 3 of the Act, 42 Pa.C.S.A. § 7533, this Honorable Court may determine and declare the rights, status and

> other relations with respect to the Policy.
>
> 17. A declaratory judgment would terminate the uncertainty and controversy with respect to whether the Plaintiff's lack of title to a portion of the Premises is a covered risk under the Policy.
>
> 18. Plaintiff seeks a declaration from this Court as to the respective rights of the parties under the Policy, a determination whether the Plaintiff is entitled to damages for her claim and if so, the extent of such damages.
>
> 19. Defendant's actions have been arbitrary, vexatious, obdurate and in bad faith in reviewing this claim, entitling Plaintiff to attorneys' fees in this matter.

(Id. ¶¶ 16-19). In her state court prayer for relief, plaintiff requests (1) that her claim under the title insurance policy be declared valid, (2) that she be awarded attorneys fees, and (3) that she be awarded "such additional relief as this Honorable Court deems just and equitable." (Id.)

In her complaint in the instant action, plaintiff advances two counts. The first count consists of claims for bad faith, 42 PA. CONS. STAT. ANN. § 8371, violations of the Unfair Insurance Practices Act, 40 PA. CONS. STAT. ANN. § 1171.4, *et seq.* and violations of the Pennsylvania Administrative Code for unfair claims settlement practices, 31 PA. CODE § 146.4, *et seq.* (Compl. ¶¶ 35-64). The second count alleges a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. CONS. STAT. ANN. § 201-1, *et seq.* (Id. ¶¶ 65-70).

Defendants argue that these two actions are parallel because "Plaintiff not only alleges in **both** actions that Commonwealth acted in 'bad faith', but seeks damages for that conduct. There simply can be no dispute that Plaintiff's request in the State Court Action for damages under the Title Policy

15

and for Commonwealth's bad faith is duplicative of the damages sought in this action." (Doc. 7, Reply Br. in Supp. of Mot. to Dismiss & Abstain at 3). Defendants overstate their argument and mischaracterize plaintiff's state court complaint. Despite using the words "bad faith" to describe Commonwealth's actions in paragraph 19 of the state court complaint, and tacking on a general request for relief, plaintiff does not assert bad faith and unfair practices claims. Rather those claims are clearly alleged in the federal complaint. The fact that both complaints contain an allegation of a similar fact–that Commonwealth acted with bad faith–is insufficient to support a finding that these cases are parallel. See R & R Capital LLC, 426 F. App'x at 89; Beals, 2011 WL 5415174, at *6; Util. Lines Constr. Servs., 799 F. Supp. 2d at 341.

Furthermore, breach of contract claims and bad faith claims are distinguishable under Pennsylvania law. A plaintiff can maintain a bad faith claim even when her breach of contract claim is unresolved or unsuccessful. Doylestown Elec. Supply Co. v. Md. Cas. Ins. Co., 942 F. Supp. 1018, 1019-20 (E.D. Pa. 1996) (holding that plaintiff does not need to prove breach of contract prior to bringing a bad faith claim under § 8371); Winterberg v. CNA Ins. Co., 868 F. Supp. 713, 722 (E.D. Pa. 1994) ("[C]ourts have held that success on a bad faith claim under § 8371 does not depend on the success of the underlying insurance benefits claim." (citing March v. Paradise Mut. Ins. Co., 646 A.2d 1254, 1256 (Pa. Super. Ct. 1994))); Adamski v. Allstate Ins. Co., 738 A.2d 1033, 1039 n.5 (Pa. Super. Ct. 1999) ("A bad faith action under

16

section 8371 is neither related to nor dependent on the underlying contract claim against the insurer."). Thus, defendants are incorrect in their assertion that "it is indisputable that this Court cannot grant the relief requested in this action unless the Title Claim is covered by the Title Policy." (Doc. 3-2, Mem. In Supp. of Mot. to Dismiss & Abstain at 7).

The court need not address the six Colorado River exceptional circumstances factors because defendants have failed to meet the threshold requirement that the state and federal court lawsuits are parallel. See Ryan v. Johnson, 115 F.3d 193, 196 (3d Cir. 1997) (noting that if the state and federal cases are not parallel, "the district court lacks the power to abstain."); see also R & R Capital LLC, 426 F. App'x at 89 (declining to delve into the multi-factor test when the cases at issue were not parallel); Harris v. Bristol-Myers Squibb Co., No. 11-6004, 2012 WL 1243260, at *11 (D.N.J. April 12, 2012) (same). Therefore, defendants' motion to abstain will be denied.

**Conclusion**

For the above-state reasons, Defendants' motion made pursuant to Rule 12 of the Federal Rules of Civil Procedure will be granted in part and denied in part. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DIANE HYJURICK,** | : | No. 3:11cv1282 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **COMMONWEALTH LAND TITLE** | : | |
| **INSURANCE CO. and FIDELITY** | : | |
| **NATIONAL FINANCIAL, INC.**, | : | |
| individually & t/d/b/a Fidelity National | : | |
| Title Group, | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 27th day of April 2012, Defendants' motion to dismiss plaintiff's complaint (Doc. 3) is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendants' motion to dismiss is **GRANTED** with respect to the claims against Defendant Fidelity National Financial, Inc.; and

2. Defendants' motion is **DENIED** in all other respects.

                                              **BY THE COURT:**

                                              **s/ James M. Munley**
                                              **JUDGE JAMES M. MUNLEY**
                                              **United States District Court**